UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| **Brandon Lee Smith,** | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **TransUnion, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Brandon Lee Smith, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Anderson Division because the Plaintiff resides in Anderson County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Brandon Lee Smith, is a resident and citizen of the State of South Carolina, Anderson County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

**FACTUAL ALLEGATIONS**

15. On or about December 15, 2023, Plaintiff learned he had been the victim of identity theft when he received a letter from Big Lots stating his application for a credit card had been denied. Plaintiff had not applied for a Big Lots credit card.

16. As a result, on or about December 15, 2023, Plaintiff added a credit freeze to his TransUnion credit file.

17. On or about December 18, 2023, Plaintiff signed up for Cyberscout, a credit monitoring service offered through his bank. It was then Plaintiff learned that a Best Buy credit card and a Target credit card had been fraudulently opened in his name on December 9, 2023.

18. On or about May 29, 2024, Plaintiff received an email alert from Cyberscout that a new collection account had been added to his credit reports. The collection account was for a rental property debt with a balance of $6,800.00. The collection account was reported by TransWorld Systems, Inc. (hereinafter "TSI") for an unpaid balance with Maymont Homes, f/k/a Conrex Property Management, LLC, (hereinafter the "Account"), for a home located in Easely, South Carolina.

19. Plaintiff has never rented a home in Easely, South Carolina.

20. Plaintiff has lived at his current address since 2021, and owns the property with a mortgage through Nationstar Mortgage a/k/a Mr. Cooper.

21. On or about May 30, 2024, Plaintiff opened a case online with Cyberscout concerning the Account.

22. On or about June 28, 2024, Plaintiff disputed the Account directly with TSI in a

4

three-way call with Sandy Freeman, a Cyberscout Resolution Specialist.

23. On or about July 1, 2024, Plaintiff filed a police report with the Anderson County Sheriff's Office.

24. On or about August 27, 2024, TSI forwarded a letter to Plaintiff acknowledging receipt of Plaintiff's dispute of the Account as fraud and stating it was in the process of notifying the creditor. With the letter, TSI included a copy of the Residential Lease Agreement and Resident Statement from Conrex Property Management, LLC, and a Fraud Alert Packet.

25. On or about October 21, 2024, Plaintiff sent TSI the completed Fraud Alert Packet and included a copy of the police report he filed, along with the detective's phone numbers. TSI received the completed Fraud Alert Packet on October 23, 2024.

26. In December 2024, Plaintiff called TSI. During this call, TSI informed Plaintiff that the Account was Plaintiff's debt to pay.

27. On or about January 3, 2025, Plaintiff obtained a copy of his TransUnion credit report through annualcreditreport.com. When Plaintiff reviewed the report, he discovered that TSI was reporting the Account as a collection account belonging to Plaintiff.

28. On or about January 15, 2025, Plaintiff sent a dispute letter to Defendant **("First Dispute")** disputing the TSI Account as not his account as he had never rented from Conrex Property Management. Plaintiff also disputed an address on Lakeview Driver where Plaintiff had never lived. Plaintiff requested Defendant remove both the Account and the address from his credit report.

29. Defendant received Plaintiff's First Dispute on January 21, 2025.

5

30. At the time Defendant received Plaintiff's First Dispute, a real estate mortgage was being reported on Plaintiff's credit file by Nationstar Mortgage LLC with an open date of June 4, 2021.

31. On or about February 7, 2025, Plaintiff received the results of Defendant's alleged investigation into his first dispute, wherein Defendant informed Plaintiff that TSI had verified the Account as accurate and updated the "Date Updated" section. As a result, Defendant continued to report the Account as a derogatory collection account belonging to Plaintiff on his TransUnion credit report.

32. Defendant did no independent investigation into Plaintiff's First Dispute and simply accepted TSI's verification the Account was reporting accurately.

33. TSI is not a reliable furnisher of information to Defendant.

34. On or about March 5, 2025, Plaintiff sent a second dispute letter to Defendant **("Second Dispute")** again disputing the TSI Account as not his account as he had never rented from Conrex Property Management. Plaintiff requested the Account be removed from his credit report.

35. Defendant received Plaintiff's Second Dispute on April 2, 2025.

36. At the time Defendant received Plaintiff's Second Dispute, the real estate mortgage being reported on Plaintiff's credit file by Nationstar Mortgage LLC with an open date of June 4, 2021, was still reporting.

37. On or about April 4, 2025, Plaintiff received the results of Defendant's alleged investigation into his second dispute, which showed that TSI had again verified the Account as accurate, with the "Date Updated," "Remarks," "Rating," and "Historical

6

Trended Data" information updated. As a result, Defendant continued to report the Account on Plaintiff's credit report as a derogatory collection account for TSI on behalf of Conrex Property Management LLC, with a balance due of $6,877. The TSI Account remained the only derogatory account reporting on Plaintiff's TransUnion credit report.

38. Defendant did no independent investigation into Plaintiff's Second Dispute and simply accepted TSI's verification the Account was reporting accurately.

39. On or about May 8, 2025, Plaintiff sent a third dispute letter to Defendant **("Third Dispute")**, stating that his credit report was still incorrect. Plaintiff again informed Defendant that the TSI Account was not his account as he had never rented from Conrex Property Management. Plaintiff requested the Account be removed from his TransUnion credit report. Plaintiff also included a copy of the police report he filed regarding the identity theft.

40. Defendant received Plaintiff's Third Dispute on May 19, 2025.

41. At the time Defendant received Plaintiff's Third Dispute, the real estate mortgage being reported on Plaintiff's credit file by Nationstar Mortgage LLC with an open date of June 4, 2021, was still reporting.

42. On or about May 21, 2025, Plaintiff received the Investigation Results from Defendant showing that Defendant had finally deleted the Account from Plaintiff's credit report.

43. While Defendant was reporting the Account as belonging to Plaintiff on Plaintiff's credit file, Plaintiff's TransUnion credit report was viewed by Plaintiff's mortgage holder, Nationstar Mortgage, LLC, and his credit card company, Bank of America.

44. Defendant failed to make a reasonable investigation into Plaintiff's disputes.

45. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

46. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

47. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

48.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 47 hereinbefore as if fully set forth herein.

49.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

50.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

51.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered damage to his credit and credit reputation, his credit score dropped significantly, and he lost credit opportunities. Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

54. The Plaintiff adopts the averments and allegations of paragraphs 15 through 53 hereinbefore as if fully set forth herein.

55. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

56. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

57. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

58. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered damage to his credit and credit reputation, his credit score dropped significantly, and he lost credit opportunities. Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

61. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

11

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169